## DIETZ *v.* FIFTY PLUS FIVE CORPORATION.

DAMAGES—GROSSLY INADEQUATE VERDICT—EQUALLY DIVIDED COURT.
Verdict and judgment of $250 for damages to car, hospital
expense, and pain and suffering in action arising from rear-end
collision is affirmed by an equally divided court on appeal
from order denying plaintiff's motion for new trial on ground
of gross inadequacy of verdict.

Appeal from Wayne; Wise (John M.), J. Submitted June 6, 1963. (Calendar No. 30, Docket No. 49,855.) Decided September 4, 1963. Rehearing denied October 9, 1963.

Case by Eva K. Dietz against the Fifty Plus Five Corporation, an Ohio corporation, and Melvin C. Holmes for personal injuries and property damage sustained in rear-end collision of automobiles. Verdict and judgment for plaintiff. Claiming inadequacy of verdict, plaintiff appeals. Affirmed by an equally divided court.

*Frank C. Glabach* and *Robert Steen,* for plaintiff.

*George Belitsos,* for defendants.

SOURIS, J. (*for reversal and remand*). Plaintiff was awarded a jury verdict of $250 for personal injuries and for property damage to her automobile which, while stopped for a traffic light, was struck from the rear by an automobile owned by the corpo-

REFERENCES FOR POINTS IN HEADNOTE
5 Am Jur 2d, Appeal and Error § 902.

rate defendant and driven by the other defendant. She claims on appeal that the verdict was grossly inadequate in the light of her proofs, that she was denied a fair trial by erroneous rulings and prejudicial remarks of the trial judge, and that the instructions to the jury were erroneous and unfair to her.

As in *Fordon* v. *Bender,* 363 Mich 124, and *Mosley* v. *Dati,* 363 Mich 690, defendants' negligence and plaintiff's freedom from contributory negligence are not disputed. Likewise, as in those cases, an award of damages for plaintiff was made, thus demonstrating the jury found that at least some of plaintiff's damages were proximately caused by defendants' negligence.

In this case, property damage in the amount of $100 was uncontroverted, and the jury was so instructed. Deducting the conceded property damage of $100 from the jury's verdict, only $150 remains as compensation for plaintiff's medical expenses and her pain and suffering. The jury was instructed that some of the proofs of expense for medical examinations and treatment of plaintiff's neck and back were, as the trial judge advised the jury, "almost conceded to be due to this accident." The concession referred to appears in defendants' opening statement to the jury made just before commencing defendants' proofs. Defendants' counsel conceded damaging plaintiff's automobile and that plaintiff was "shaken up" as a result of the sudden collision from the rear. He acknowledged liability for the property damage and for some of plaintiff's personal injuries, but disputed the extent of the latter.

As defense counsel also indicated in his opening statement, virtually the sole disputed issue in the trial of this case was the causal connection between the collision and claimed aggravation of a pre-existing hiatus hernia for which surgery was performed

upon plaintiff 2 months later. There was no dispute over injuries to plaintiff's neck and back, which were established by the clear preponderance of the evidence. Nor was there any dispute that plaintiff paid in excess of $100 for medical attention and X-rays therefor, which expenses were not related to the disputed hiatus hernia. In addition, some drugs were purchased, but the cost thereof was not clearly separated from the cost of other drugs prescribed to relieve plaintiff's discomfort from the hernia.

At most, therefore, plaintiff was allowed only $50 for pain and suffering resulting from her neck and back injuries. That the pain she suffered from such injuries was severe and at least temporarily disabling was overwhelmingly established by plaintiff's proofs. Failure of the jury to award any more than $50 for such pain and suffering, over and above her minimum expenditures for medical care, demonstrates its disregard of the trial judge's instruction "that physical pain and suffering are elements of damage for which the injured party is entitled to recover fair compensation." The trial judge should have granted plaintiff's motion for new trial, which was based upon the inadequacy of the verdict, in order to avoid patent injustice to plaintiff.

While this jury verdict includes a nominal award for pain and suffering over and above plaintiff's out-of-pocket expenses for her conceded personal injuries, unlike the jury verdicts we reversed in *Fordon* v. *Bender* and *Mosley* v. *Dati,* the principles we apply are identical. In each of the former cases, the absence of any award for pain and suffering from injuries the jury found to have been proximately caused by defendant manifested the jury's disregard of the trial judge's instruction that compensation be awarded therefor if liability were found. In this case, although the jury followed the judge's instruction by awarding some damages for

pain and suffering from injuries conceded to have been proximately caused, its nominal award manifested its disregard of his instruction that such damages be "fair compensation" for plaintiff's pain and suffering. Unlike *A'Eno* v. *Lowry,* 367 Mich 657, causal connection was not disputed except with reference to the claimed aggravation of plaintiff's hiatus hernia, with which we need not be concerned on this appeal. Likewise, this case differs from *Greinke* v. *Yellow Cab Company of Muskegon,* 368 Mich 611, in that we have limited our attention in this case only to the adequacy of damages awarded for those injuries it is conceded plaintiff suffered as a consequence of the collision, whereas in *Greinke* the issue presented was the judicial propriety of the fact finder's refusal to award damages for some of the injuries claimed.

Appellant's complaints of unfair and prejudicial conduct by the trial judge in his rulings, remarks and jury instructions are raised for the first time on appeal by counsel who did not try the case for plaintiff and who did not present plaintiff's motion for new trial to the court below. Having reviewed the entire transcript of proceedings in this case, we cannot but conclude from the judge's comments during trial to plaintiff and 1 of her witnesses that a very strained relationship existed between plaintiff and the trial judge. With some frequency he interrupted her testimony, even without the prompting of an objection by defense counsel, to admonish her for giving hearsay testimony or for giving answers not responsive to the questions asked. Other remarks were made by him, in the jury's presence, from which the jury most certainly was made aware of the existing animus. It is not necessary to determine whether such circumstances standing alone would have constituted reversible error in this case, a new trial being required for the verdict's gross inadequacy. On re-

trial, however, we suggest as was suggested by the Court in *Schneider* v. *Pomerville,* 348 Mich 49, 58, "that the trial judge refrain from making, on his own motion, objections to questions * * * by plaintiff's counsel. The present record discloses more of that practice than appears reasonably necessary."

The judgment should be reversed and the cause remanded for new trial. Costs to appellant.

O'Hara, J. (*for affirmance*). I am unable to find accord with the result reached by Mr. Justice Souris.

The disagreement with my able colleague does not arise from his application of any precedent law but rather to the conclusion he reaches from a postulate of his own. The particular part of the opinion to which I am compelled to record dissent is as follows:

"In this case, although the jury followed the judge's instruction by awarding some damages for pain and suffering from injuries conceded* to have been proximately caused, its nominal award manifested its disregard of his instruction that such damages be 'fair compensation'."

I believe we enter a very dangerous area of appellate review of jury awards where we accept the premise that the jury correctly awarded "some damages" but that such damages were not "fair compensation." I fear this is tantamount to saying to the jury the amount of damage you award is solely in your province, so long as we agree with you.

We have written times without number, and citations would lend nothing to the statement, that we will not substitute our judgment for that of the trier of the fact issues. This includes the amount of damages for pain and suffering. True, we have set aside verdicts as "shocking the judicial conscience"

---

* Verbatim. "*Almost* conceded to be due to this accident."

but at least to the extent of my review of case law, I find no precedent for substituting appellate judgment for that of the jury as to what is "fair compensation." That the jury was careful, conscientious, well aware of the instructions of the court and willing to follow them seems to me clearly established by the following excerpt from the record:

"*The Court:* Let the record indicate that the jury has in writing requested of the court as follows:

" 'As a point of proper procedure, are the damages to be itemized or given as a total amount?' "

I have further disagreement with my associate in the following conclusion he reaches:

"Having reviewed the entire transcript of proceedings in this case, we cannot but conclude from the judge's comments during trial to plaintiff and 1 of her witnesses that a very strained relationship existed between plaintiff and the trial judge."

Rather than "existing animus" (as my Brother finds) between the trial court and plaintiff, the record, to me, reflects a high degree of judicial patience, restraint and objectivity:

"*The Court:* Ma'am, would you just answer the questions your attorney is asking you?    *    *    *

"*The Court:* I am not going to have to forewarn you again. You just don't ramble off on what you want to say. Just go according to the rules of evidence and rules of law. When you are asked a question, answer it relative to what you saw or heard, what the defendant may have told you, but not hearsay."

"(Cross-Examination)

"*Q.* Do you find you are more comfortable in this garment when you are sitting or standing?

"*A.* I was comfortable in it at any time.

"*The Court:* Will you answer the question, ma'am?    *    *    *

"*A.* I could better say I was not uncomfortable in it.

"*The Court:* The question was, were you more comfortable sitting or standing with this garment on? Can you answer that question?

"*A.* Well, as I said, I was not uncomfortable at any time, sitting or standing.

"*The Court:* So that there wasn't any difference in comfort whether you are standing or sitting?

"*A.* That is right."

Bearing in mind that this was cross-examination, a trial judge prejudiced toward plaintiff could hardly have been more helpful to her in getting into the record the answer she wanted to make.

The plaintiff in this case was, as the saying has it, "a hard guy to help." The record discloses more of the trial court's problems with her:

"*The Court:* * * * I am not going to hold this case for you because we have been putting a whole week in on this case, * * * I will tell you right now, ma'am, I am going to proceed * * * and your counsel will proceed in his argument to the jury. There is no more testimony to be taken.

"*Mrs. Dietz:* I am going to ask for some other counsel. Why should—

"*The Court:* Ma'am I don't care for you to argue to this court—

"*Mrs. Dietz:* I don't want to. I shouldn't have to.

"*The Court:* Well, just be seated, ma'am.

"*Mrs. Dietz:* I am not going to be seated. I am going to get other counsel."

Plaintiff thereupon left the courtroom and the court added:

"*The Court:* I would like the record to show that the action of the plaintiff in this cause has been such, indicating that she wanted another attorney, at the time when it came for the arguments to the jury, that the records indicate that she has had 11 different

attorneys  *  *  *  in the divorce action  *  *  * and 2 in this instant case  *  *  *  any attorney that represented her has never been satisfactory."

All this, of course, took place in the absence of the jury. The record in this case indicates to me objective treatment of both parties and their counsel. In view of the fact issue and the proximate causality both of the extent of plaintiff's injuries and relationship of claimed expense to the negligence of defendant, I would affirm the order of the trial court denying the motion for a new trial, with costs to the appellee.

CARR, C. J., and DETHMERS and KELLY, JJ., concurred with O'HARA, J.

KAVANAGH, J. (*for reversal and remand*). I concur in the opinion of Justice SOURIS except as to his reference to alleged differences of *A'Eno* v. *Lowry*, 367 Mich 657.

For the reasons stated in my opinion in *A'Eno* v. *Lowry*, I do not see any difference between the instant case, *Mosley* v. *Dati*, 363 Mich 690, and *Fordon* v. *Bender*, 363 Mich 124.

BLACK and SMITH, JJ., concurred with KAVANAGH, J.