**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

**FILED MARCH 8, 2005**

**WILLIAM FRANK WARD,**

    **Plaintiff-Appellee,**

**v**

**No. 124533**

**CONSOLIDATED RAIL CORPORATION,**

    **Defendant-Appellant.**

_____

**PER CURIAM**

The issue before us concerns the consequence, if any, of defendant's inability to produce an allegedly defective locomotive handbrake at trial.

In this case, the trial court instructed the jury that because defendant disposed of the handbrake, it was presumed to be defective and the jury could infer that the missing evidence was unfavorable to defendant. This instruction was given despite the fact that defendant produced evidence that it discarded the handbrake in the regular course of business, for reasons unrelated to plaintiff's claim. The jury returned a verdict for

plaintiff. The Court of Appeals affirmed, in part, and remanded.[1]

We conclude that the jury instructions were flawed in two respects. First, the trial court erred when it instructed the jury that the handbrake was presumed to be defective. Such a presumption is not supported by the evidence. Second, the trial court erred when it instructed the jury that it could draw an adverse inference, but failed to explain that no inference should be drawn if defendant had a reasonable excuse for its failure to produce the evidence. Because these errors were not harmless, we reverse the part of the Court of Appeals judgment concerning the Federal Safety Appliance Act, 49 USC 20302, and remand this case for a new trial on that claim before a properly instructed jury.

## I. BACKGROUND

Plaintiff, a railroad engineer, claimed that he was injured by a faulty handbrake that he was using to secure one of defendant's locomotives. The braking system employs two control levers. The brake is engaged by moving the application lever in an up-and-down arc; each upward stroke tightens a chain that runs from the lever to the brake.

---

[1] Unpublished opinion per curiam, issued August 7, 2003 (Docket No. 234619).

2

The brake is disengaged through a separate release lever. Plaintiff claimed that his back was injured when the application lever unexpectedly stopped while he was in the middle of an upward stroke.[2]

Plaintiff reported his injury to his employer the next day. Defendant had inspected the locomotive four days before plaintiff's accident and the handbrake was working properly at that time. In response to plaintiff's injury report, the entire handbrake assembly was inspected again, this time by defendant's trainmaster and a locomotive machinist. They took apart and examined the assembly, including the levers, brake chain, and gear mechanism. They determined that the handbrake was functioning properly and returned the locomotive to service.

Defendant's employees then operated the locomotive regularly for more than two weeks, successfully using the application lever to engage the brake. Nineteen days after plaintiff's injury, one of defendant's employees reported that the release lever jammed and that the handbrake could not be disengaged. The locomotive was moved to a repair facility in Elkhart, Indiana, where it was examined by

---

[2] Defendant's trainmaster had once before experienced difficulty engaging the handbrake; the evidence showed that this is a fairly common occurrence and is not considered a defect in the brake.

defendant's maintenance supervisor. He removed and discarded the entire handbrake assembly and installed a new one. The Elkhart maintenance supervisor was unaware of plaintiff's earlier report of a malfunction in the application lever.

Plaintiff filed this lawsuit more than ten months later. He theorized that the application lever stopped in mid-stroke because of the presence of a repair link, or clevis, in the brake chain. He alleged that defendant was negligent under the Federal Employers' Liability Act (FELA), 45 USC 51 *et seq.*, and that defendant violated both the Federal Locomotive Inspection Act (FLIA), 49 US 20701 *et seq.*,[3] and the Federal Safety Appliance Act (FSAA), 49 USC 20302.[4]

In a motion for partial summary disposition, plaintiff informed the trial court that defendant discarded the entire handbrake assembly and argued that he was entitled

---

[3] The FLIA states, in relevant part, that a railroad carrier may "use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances . . . [a]re in proper condition and safe to operate without unnecessary danger of personal injury . . . ." 49 USC 20701(1).

[4] The FSAA states, in relevant part, that a railroad carrier may "use or allow to be used on any of its railroad lines . . . a vehicle only if it is equipped with . . . efficient hand brakes . . . ." 49 USC 20302(a)(1)(B).

4

to a presumption that the handbrake was defective. Defendant argued that no adverse presumption should be made because the handbrake was discarded in the ordinary course of business following a malfunction in the release lever—a mechanism different from the one plaintiff theorized caused his injury. Defendant supported its position with an affidavit from its Elkhart maintenance supervisor. The trial court resolved this issue in plaintiff's favor and reaffirmed its ruling before the start of trial.

The jury was made aware of the presumption. Plaintiff's counsel said, during opening statement:

> And even though they knew about the injury, they knew about these claims, the defect in this hardware, they destroyed the evidence. The railroad destroyed the evidence. They threw away the chain, they threw away the clevis, they threw away the entire handbrake even though they had this knowledge. And it is for this reason that this Court has concluded there is a presumption in this case that this handbrake was defective when Mr. Ward went to use it and got hurt on the evening of February 19, 1998.

This theme was repeated during jury voir dire and closing arguments.

After the close of evidence, the trial court reminded the jury of the presumption and instructed it that it could infer that the missing evidence would have been unfavorable to defendant:

5

The Court made a determination that there was a presumption that the handbrake at issue was defective due to the fact that the handbrake clevis and chain were discarded by defendant. The defendant railroad has come forward with some evidence to rebut this presumption. Accordingly, the law requires that I instruct you as follows:

Certain evidence relevant to this case, namely the handbrake, the clevis and chain, were not available at trial because they were destroyed while in the possession or control of the defendant. The Rules of Evidence provide that you, the jury, may infer that this evidence was unfavorable to the defendant.

The jury returned a verdict for plaintiff. It found that defendant was not negligent under the FELA and that the handbrake was "in proper condition and safe to operate without unnecessary danger of personal injury" as required by the FLIA. The jury concluded, however, that the handbrake was not "efficient" as required by the FSAA and awarded plaintiff damages on this basis.

Defendant appealed. The Court of Appeals held that the trial court properly granted plaintiff a presumption of defect and properly instructed the jury.[5]

Defendant now seeks leave to appeal with this Court.[6]

---

[5] Defendant raised a total of thirteen issues in the Court of Appeals. It obtained relief on one issue relating to the calculation of case-evaluation sanctions.

[6] We consider here only defendant's claim that the trial court erred when it granted plaintiff a presumption that the missing handbrake was defective and when it

6

## II. STANDARD OF REVIEW

We review claims of instructional error de novo. *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 8; 651 NW2d 356 (2002). Jury instructions should not omit material issues, defenses, or theories that are supported by the evidence. *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000). Instructional error warrants reversal if it "resulted in such unfair prejudice to the complaining party that the failure to vacate the jury verdict would be 'inconsistent with substantial justice.'" *Johnson v Corbet*, 423 Mich 304, 327; 377 NW2d 713 (1985); MCR 2.613(A).

## III. DISCUSSION

The trial court's instructions to the jury blurred the distinction between presumptions and inferences and were not tailored to the evidence submitted by the parties.

In *Widmayer* v *Leonard*, 422 Mich 280, 289-290; 373 NW2d 538 (1985), we explained that a presumption is a "procedural device" that entitles the person relying on it to a directed verdict if the opposing party fails to introduce evidence rebutting the presumption. If rebuttal

---

instructed the jury on this issue. In all other respects, defendant's application for leave to appeal is denied.

evidence is introduced, the presumption dissolves, but the underlying inferences remain to be considered by the jury:

> Almost all presumptions are made up of permissible inferences. Thus, while the presumption may be overcome by evidence introduced, the inference itself remains and may provide evidence sufficient to persuade the trier of fact even though the rebutting evidence is introduced. But always it is the inference and not the presumption that must be weighed against the rebutting evidence. [*Id*. at 289.]

It is well settled that missing evidence gives rise to an adverse presumption only when the complaining party can establish "'intentional conduct indicating fraud and a desire to destroy [evidence] and thereby suppress the truth.'" *Trupiano v Cully*, 349 Mich 568, 570; 84 NW2d 747 (1957), quoting 20 Am Jur, Evidence, § 185, p 191; *see also Lagalo v Allied Corp (On Remand)*, 233 Mich App 514, 520; 592 NW2d 786 (1999).

The evidence here does not warrant a presumption that the application lever of the handbrake was defective. When plaintiff requested the presumption, he established only that he gave defendant notice that the application lever had malfunctioned and that defendant discarded the entire handbrake assembly approximately three weeks later. This falls short of establishing that defendant committed "'intentional conduct indicating fraud and a desire to destroy [evidence] and thereby suppress the truth.'"

8

*Trupiano, supra* at 570, quoting 20 Am Jur, Evidence, § 185, p 191.

Moreover, even if plaintiff's initial evidentiary showing had been sufficient, no presumption would ultimately remain because defendant came forward with rebuttal evidence that provided a nonfraudulent explanation for its decision to discard the handbrake. *See Widmayer, supra* at 289. Once defendant presented this evidence, the initial presumption dissolved and, at best, the fact-finder was left with the possibility of considering the underlying inferences. *Id.* As a result, the trial court erred when it granted plaintiff an unrebuttable, adverse presumption that the handbrake was defective and allowed the jury to be informed of its ruling.

The trial court compounded this error when it read the jury a modified version of M Civ JI 6.01 and instructed the jury that it could infer that the evidence would have been unfavorable to defendant.[7] A jury may draw an adverse

---

[7] **M Civ JI 6.01(c)** addresses the situation, like this one, where a party admits that it had control of evidence but cannot produce it and seeks to offer a reasonable excuse:

> (The *[plaintiff / defendant]* in this case has not offered *[the testimony of* [name] / [identify exhibit]]*. As this evidence was under the control of the *[plaintiff / defendant]* and

inference against a party that has failed to produce evidence only when: (1) the evidence was under the party's control and could have been produced; (2) the party lacks a reasonable excuse for its failure to produce the evidence; and (3) the evidence is material, not merely cumulative, and not equally available to the other party. *Lagalo, supra* at 520; M Civ JI 6.01. In this case, the trial court's instruction omitted the critical language in M Civ JI 6.01 explaining that no adverse inference arises if defendant has a reasonable explanation for its failure to produce the missing evidence. We conclude, therefore, that the trial court erred both in regard to the adverse presumption ruling and the modified M Civ JI 6.01(c) instruction.

Having determined that the trial court erred, we turn to the issue whether the error was harmless.[8] Instructional

could have been produced by *[him / her]*, you may infer that the evidence would have been adverse to the *[plaintiff / defendant]*, if you believe that no reasonable excuse for *[plaintiff's / defendant's]* failure to produce the evidence has been shown.)

[8] As an initial matter, before a "harmless error" inquiry is performed by the reviewing court, the party challenging the instruction must preserve the issue for appeal. MCR 2.516(C). To preserve the issue, the party must timely object to the instruction on the record, "stating specifically the matter to which the party objects and the grounds for the objection." *Id.*

10

error is harmless unless a failure by the reviewing court to correct the error would be "inconsistent with substantial justice." MCR 2.613(A). The error in this case was harmless with regard to the FELA and FLIA claims because the jury returned a verdict of no cause of action in favor of defendant. We do not disturb this aspect of the judgment. *Id.* The error was not harmless, however, with regard to the jury's finding that the handbrake was "inefficient" and that defendant violated the FSAA.

During trial, plaintiff's counsel made repeated references to the erroneous adverse presumption ruling. Counsel for plaintiff told the jury during voir dire, opening arguments, and closing arguments that the handbrake

---

At oral argument, counsel for plaintiff stipulated the timeliness of defendant's objection. Plaintiff's counsel only challenged the specificity of the objection. At trial, defense counsel objected to the instruction given by the trial court by stating, "The defendant objects to the presumption instruction or the revised presumption instruction that was given today. We object to the fact that the requested instruction by the defendant regarding inference that the prior and post condition of the brake should have been considered."

While we acknowledge that defense counsel's objection is not a model of clarity, we conclude that defense counsel satisfied the specificity requirements of MCR 2.516(C). Counsel stated specifically the matter to which defendant objected (i.e., the revised presumption instruction given by the trial court) and the grounds for the objection (i.e., that the trial court did not give the full inference instruction requested by defendant). Accordingly, defense counsel preserved the issue for appeal.

could be "presumed defective." The trial court itself reminded the jury of the adverse presumption when it instructed the jury before deliberations. The trial court's erroneous ruling on the adverse presumption and the numerous references by plaintiff's counsel to the ruling during trial fundamentally prejudiced defendant with respect to the FSAA claim because it significantly interfered with the jury's ability to "'decide the case intelligently, fairly, and impartially.'" *Cox*, *supra* at 15 (quoting *Johnson*, *supra* at 327). Accordingly, failure to vacate this aspect of the judgment and to grant defendant a new trial on the FSAA claim would be "inconsistent with substantial justice." MCR 2.613(A).

We are not persuaded by plaintiff's argument that the trial court cured its erroneous adverse presumption ruling when it later read the jury a modified version of the adverse inference instruction contained in M Civ JI 6.01(c). To the contrary, the trial court's truncated version of M Civ JI 6.01(c) only compounded its prior error. The modified version of M Civ JI 6.01(c) omitted the critical language informing the jury that no adverse interference arises if the jury believes that a reasonable excuse for defendant's failure to produce the missing evidence has been shown.

12

At trial, defendant presented evidence that its maintenance supervisor, unaware of plaintiff's earlier injury report, discarded the handbrake assembly during the normal course of business. Specifically, defendant offered evidence that its maintenance supervisor discarded the handbrake assembly in response to a separate complaint about the handbrake's *release* lever—a lever different from the *application* lever, which plaintiff theorized caused his injury. Accordingly, because defendant presented a reasonable excuse for its failure to produce the handbrake at trial, we conclude that defendant was fundamentally prejudiced by the trial court's modified version of M Civ JI 6.01(c). Defendant was entitled to have the jury hear the entire version of M Civ JI 6.01(c), not an abbreviated version that created an artificial and overwhelming advantage in favor of plaintiff. To hold otherwise would deny defendant a fair trial and would be "inconsistent with substantial justice." MCR 2.613(A); see also *Cox*, *supra* at 15 (holding that the failure to reverse on the basis of the trial court's modified version of SJI2d 30.01, which effectively altered the burden of proof, would be inconsistent with substantial justice).

## IV. CONCLUSION

Accordingly, we reverse the part of the Court of Appeals judgment concerning the FSAA claim and remand this case to the trial court for a new trial on plaintiff's FSAA claim before a properly instructed jury. On remand, the trial court shall instruct the jury that it may infer that the evidence would be unfavorable to defendant, but that no such inference should arise if the jury believes that defendant has a reasonable explanation for its failure to produce the missing evidence. M Civ JI 6.01(c).

Clifford W. Taylor
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

S T A T E   O F   M I C H I G A N

SUPREME COURT

WILLIAM FRANK WARD,

    Plaintiff-Appellee,

v                                         No. 124533

CONSOLIDATED RAIL CORPORATION,
d/b/a CONRAIL,

    Defendant-Appellant.

_____

CAVANAGH, J. (*dissenting*).

    While I tend to agree that the trial court initially erred under existing law when it concluded that plaintiff was entitled to an adverse presumption,[1] I am not as convinced as the majority that the trial court ultimately erred when it instructed the jury that it could infer that the missing evidence was unfavorable to defendant.[2] Moreover, even assuming that the trial court erroneously

_____

    [1] See *Trupiano v Cully*, 349 Mich 568, 570; 84 NW2d 747 (1957).

    [2] See, e.g., *In re Wood Estate*, 374 Mich 278, 288-290; 132 NW2d 35 (1965). See also *Widmayer v Leonard*, 422 Mich 280, 289; 373 NW2d 538 (1985); *Brandt v C F Smith & Co*, 242 Mich 217, 222; 218 NW 803 (1928); *Dowagiac Mfg Co v Schneider*, 181 Mich 538, 541; 148 NW 173 (1914); *Vergin v City of Saginaw*, 125 Mich 499, 503; 84 NW 1075 (1901); *Cooley v Foltz*, 85 Mich 47, 49; 48 NW 176 (1891); *Cole v Lake Shore & M S R Co*, 81 Mich 156, 161-162; 45 NW 983 (1890).

instructed the jury, I would conclude that the error was harmless.

Here, the jury found that defendant was not negligent under the Federal Employers' Liability Act (FELA), 45 USC 51 *et seq*. The jury also concluded that the handbrake in question was in proper condition and safe to operate without unnecessary danger of personal injury as required by the Federal Locomotive Inspection Act (FLIA). See 49 USC 20701(1). However, the jury found that the Federal Safety Appliance Act (FSAA), specifically 49 USC 20302(a)(1)(B), had been violated because the handbrake was inefficient. On the facts before us, I fail to see how the perceived error in this case resulted in such unfair prejudice to defendant that permitting the jury's verdict to stand would be inconsistent with substantial justice. In my view, the jury could have reached its verdict without the aid of the trial court's arguably erroneous instruction. The jury could have concluded that defendant was not negligent and that the handbrake, even though not unnecessarily dangerous, was nonetheless inefficient.[3] Accordingly, I must respectfully dissent.

Michael F. Cavanagh
Marilyn Kelly

---

[3] See, e.g., MCR 2.613(A); *Urben v Pub Bank*, 365 Mich 279, 287; 112 NW2d 444 (1961); *Macklem v Warren Constr Co*, 343 Mich 334; 72 NW2d 60 (1955).